# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 00-1792

———————

Tiny Totland, Inc.,

        Plaintiff/Appellant,

v.

Spalding & Evenflo Companies, Inc.
and Evenflo Company, Inc.,

        Defendants/Appellees.

Appeal from the United States
District Court for the Western
District of Missouri

———————

Submitted: January 10, 2001

Filed: March 13, 2001

———————

Before RICHARD S. ARNOLD and BOWMAN, Circuit Judges, and KYLE, District Judge.[1]

KYLE, District Judge.

Tiny Totland, Inc., brought this action for indemnification against Spalding & Evenflo Companies, Inc. and Evenflo Company, Inc. (collectively "Evenflo") following a wrongful death action in which both Tiny Totland and Evenflo had been

———————

[1] The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

named defendants. Tiny Totland had settled with the wrongful death plaintiff during trial, and the matter proceeded against Evenflo. Following the jury's verdict against Evenflo, Evenflo also reached a settlement with the wrongful death plaintiff. Tiny Totland then brought this action against Evenflo seeking indemnification for the amount it paid to the wrongful death plaintiff and its costs of defense. The district court[2] granted summary judgment in favor of Evenflo and dismissed Tiny Totland's complaint on the grounds that the settlement between Evenflo and the wrongful death plaintiff barred Tiny Totland's indemnification claim by operation of Missouri Revised Statutes § 537.060. This appeal followed. For the reasons set forth below, we affirm.

I.

On October 10, 1996, George W. Maley brought suit against Tiny Totland and Evenflo for the wrongful death of his son, Tyler. (Joint App. at 2-3, 5-6, 32.) Tyler sustained fatal injuries in a vehicular collision in Missouri. At the time of the collision, Tyler had been seated in a child safety seat manufactured by Evenflo (id. at 2, 32), and purchased from Tiny Totland. (Id. at 2.)

Mr. Maley brought a claim for strict products liability against Tiny Totland and Evenflo. (Id. at 3, 32.) He also asserted a claim of negligence, alleging, inter alia, that each defendant had failed to properly educate and train consumers regarding the proper way to install and use the child safety seat, and failed to give adequate oral or written instructions on how the seat should be used. (Id. at 15.)

Tiny Totland cross-claimed against Evenflo for indemnification. (Id. at 3, 33.) During trial, Tiny Totland reached a settlement with Mr. Maley in the total amount of $200,000.00. (Id. at 24.) Tiny Totland agreed to pay $100,000.00 in exchange for

---

[2] The Honorable John T. Maughmer, Chief United States Magistrate Judge, Western District of Missouri.

a release of all claims accruing "as a result or consequence of alleged strict product liability claims for defective design and inadequate warning." (Id.)  Tiny Totland further agreed to pay $100,000.00 in exchange for a release of all claims accruing "as a result or consequence of the alleged independent negligence and aggravating circumstances claims." (Id. at 23.)

The court submitted Mr. Maley's strict liability claim against Evenflo to the jury, which returned a verdict against Evenflo. (Id. at 3-4, 33.)  The court entered judgment for Mr. Maley, awarding him $300,000.00 in compensatory damages and assessing 20% fault to Evenflo and 80% fault to the driver of the other vehicle involved in the accident. (Id. at 4, 28, 33.)  The jury also awarded damages for aggravating circumstances against Evenflo in the amount of $600,000.00 (Id. at 28, 29.)

Following the entry of judgment, the parties stipulated to the dismissal without prejudice of Tiny Totland's cross-claim for indemnification.  Pending a ruling on Evenflo's motion for a new trial, it entered into a $700,000.00 settlement with Mr. Maley. (Id. at 84-90.)  Tiny Totland then filed this Complaint for indemnification. (Id. at 1.)

II.

Asserting that its claim for indemnification arose out of a contractual and legal relationship with Evenflo and hence was not a "noncontractual indemnity" claim barred by section 537.060 of the Missouri Revised Statutes, Tiny Totland contends that the district court erred in granting Evenflo's motion for summary judgment. We review a district court's interpretation of state law and its grant of summary judgment de novo.  Picht v. John R. Hawks, Ltd., 236 F.3d 446, 448 (8th Cir. 2001) (citing cases).

Section 537.060 of the Missouri Revised Statutes provides, in pertinent part:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, . . . [t]he agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

Mo. Rev. Stat. § 537.060. The Missouri Supreme Court has not decided whether a retailer's claim for indemnification from a manufacturer in a products liability case is a claim for "noncontractual indemnity." The Missouri Court of Appeals, however, has addressed this issue.

In Bostic v. Bill Dillard Shows, Inc., a child who was injured while riding on an amusement park ride brought a negligence action against the ride owner. Bostic v. Bill Dillard Shows, Inc., 828 S.W.2d 922, 924 (Mo. Ct. App. 1992). The ride owner in turn filed a third-party complaint against the manufacturer of the parts that had failed while the plaintiff was on the ride and against the manufacturer of the ride itself. Id. at 925. The third-party defendants settled with the plaintiff, and the trial court dismissed them from the lawsuit based on section 537.060. Id.

On appeal, the ride owner argued that section 537.060 did not apply to its third-party complaint because, inter alia, "there existed a legal relationship" between the ride owner and third-party defendants. Id. at 928. Specifically, the ride owner contended that, "under the Uniform Commercial Code, a legal relationship [was] created by Bill Dillard Shows, Inc., buying and using the plastic wheels manufactured and sold by [third-party defendants]." Id. In rejecting this argument, the Missouri Court of Appeals observed that the policy underlying section 537.060 is the encouragement of settlements; thus, the last sentence in the statute, defining *noncontractual indemnity*, "serves to expand the term and excludes only indemnity

which comes about by reason of contract or by reason of vicarious liability."[3]  Id. (emphasis added).   The court observed that the ride owner had no written contract with the third-party defendants, and any warranties that existed by virtue of the Uniform Commercial Code were implied and arose by operation of law, not by contract.   Id.   The court concluded that "[t]he manufacture and sale of the plastic wheels and the purchase and use of those wheels did not create a 'legal relationship' as contemplated by the statute."[4]  Id.

The holding in Bostic is consistent with the purpose of section 537.060, which is to encourage a tort-feasor to buy peace by entering into a good faith settlement with the plaintiff.  See Lowe v. Norfolk & W. Ry. Co., 753 S.W.2d 891, 894-95 (Mo. 1988) (en banc).  The Missouri Supreme Court has stated that the "advantages of promoting settlement outweigh the possible disadvantage to those who settle late, or who do not settle at all and stand trial."  Id. at 895.  Nor do the Missouri courts make any distinction between products liability claims and negligence claims in determining whether a settlement discharges a defendant from an obligation to pay contribution or indemnity.  Id.   The same policy consideration is present with either type of claim -- the encouragement of settlements.  Id.

---

[3] "Vicarious liability is a liability based on a legal relationship, such as employer-employee, principal-agent, or partnership," Lowe v. Norfolk & W. Ry. Co., 753 S.W.2d 891, 895 (Mo. 1988) (en banc), and hence is not barred by the "noncontractual indemnity" language of section 537.060.  Tiny Totland has cited nothing indicating that, under Missouri law, the manufacturer-retailer relationship is one that gives rise to vicarious liability.

[4] Subsequently, the Missouri Court of Appeals held that the rule regarding indemnification set forth in section 80 of the Restatement of Restitution -- that an indemnitor's liability is limited to the indemnitee's "net outlay properly expended" -- applies with equal force to claims for contractual indemnification and to claims "for noncontractual indemnification by a seller against a manufacturer in a products liability case."  Major v. Frontenac Indus., Inc., 899 S.W.2d 895, 897 (Mo. Ct. App. 1995).

Tiny Totland relies on Welkener v. Kirkwood Drug Store Co., 734 S.W.2d 233 (Mo. Ct. App. 1987) to argue that classifying a retailer's claim for indemnification against a manufacturer in a products liability case as one of "noncontractual indemnity," would undermine a countervailing public policy that the manufacturer of a defective product (rather than a retailer lower in the chain of distribution) should ultimately be liable for the injuries caused by that product. As the Welkener decision makes clear, however, that policy is not based on the existence of a "legal relationship" between the manufacturer and the seller; rather, it is based on the seller's knowledge: "We agree with the authorities which hold that a "seller" lower in the chain of distribution who sells a product without actual or constructive knowledge of a defect and who has no duty to inspect is entitled to indemnity against one higher in the chain, such as the manufacturer." Welkener, 734 S.W.2d at 242 (emphasis added). As the Missouri Supreme Court has observed, "products liability law is designed to protect injured persons, and has limited application among commercial parties who can define their rights and duties by contract." Lowe, 753 S.W.2d at 895 n.5. Classifying a seller's indemnification claim against a manufacturer in a products liability case as one for "noncontractual indemnity" is not inconsistent with the holding in Welkener or the purpose of products liability law.[5]

Based upon the foregoing, we anticipate that the Missouri Supreme Court

---

[5] Section 537.762 of the Missouri Revised Statutes allows a defendant seller in a products liability claim to obtain an order dismissing it from the suit where the only basis for its liability is its status as "a seller in the stream of commerce" and there are no facts or circumstances upon which a verdict might otherwise be entered against the seller. Mo. Rev. Stat. § 537.762(1) and (3). The Missouri Court of Appeals has indicated that section 537.762 "does not change the substantive law relating to an innocent seller's liability . . . its effect is only procedural." Malone v. Schapun, Inc., 965 S.W.2d 177, 182 (Mo. Ct. App. 1998). Section 537.762, therefore, does not modify the principle of law stated in Welkener.

would hold that, in the absence of a contractual provision allowing for indemnification, a seller's claim against a manufacturer for indemnification in a products liability case is a claim for "noncontractual indemnity" within the meaning of section 537.060. Tiny Totland and Evenflo used various documents in connection with Tiny Totland's purchase of Evenflo child safety seats -- purchase orders, invoices, packing slips, and bills of lading (see Joint App. at 169-72, 174-84) -- however, Tiny Totland does not claim that any of those documents contain an indemnification agreement that is binding against Evenflo. The record in this case does not show the existence of a contractual right to indemnification. Therefore, Tiny Totland's claim for indemnification against Evenflo is one for "noncontractual indemnity" and is barred -- pursuant to section 537.060 -- by Evenflo's settlement. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

-7-